**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COMPEER FINANCIAL, ACA, et al.,<br>Plaintiffs,<br>v.<br>MICHAEL GRAHAM, et al.,<br>Defendants. | Case No. 1:25-cv-00049 JLT EGC<br>ORDER DENYING MOTION TO DISMISS AND STRIKE<br>(Doc. 52) |

Defendant Kristie Iness argues the claims against her in this case are precluded by the results of an arbitration, and she argues the complaint does not state a claim in any event. She moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 52.) She also moves to strike portions of the complaint under Rule 12(f) if it is not dismissed. (*Id.*) The motion is **DENIED**, as explained below.

**BACKGROUND**

Compeer Financial, ACA and its subsidiaries, the plaintiffs in this case, are federally chartered credit associations that operate in Illinois, Minesota, and Wisconsin. (Doc. 46 ¶¶ 19–21, 34.) Several years ago, they made a deal with Corporate America Lending, Inc., "CAL" for short, another credit association based in Fresno, California. (*Id.* ¶¶ 1, 36, 39.) Under the terms of their agreement, Compeer had the right to payments on $58 million in loans that CAL had made to a pair of California borrowers. (*See id.* ¶¶ 39–41.)

After a few years of monthly interest payments, the two borrowers decided to refinance their loans with a different lender. (*Id.* ¶¶ 43–44.) They arranged to repay the principal balance to CAL in full, about $58 million. (*See id.* ¶ 44.) CAL was obligated to send that repayment to Compeer—it was Compeer's money under the terms of their agreement—but CAL did not pay. (*See id.* ¶¶ 46–51.) CAL and its CEO first tried to keep the refinancing a secret, but Compeer already knew it was underway. (*See id.* ¶¶ 44, 46, 52–53.) When Compeer confronted CAL, it "went radio silent and referred all further communications to its lawyers, who refused to provide any information about the whereabouts" of the money that CAL had received. *Id.* ¶¶ 55–57.

Several years of litigation and arbitration ensued. According to Compeer's complaint, CAL and its lawyers persisted in obstructionism, lied to the court and arbitrators, went back on promises, and defied the court's and arbitrators' orders, leading to sanctions and orders to show cause. (*See id.* ¶¶ 58–79.) Arbitrators decided in the end that CAL's CEO was not credible. They believed he had "likely intended from the outset to convert the [$58 million] to his and CAL's own uses." (*Id.* ¶ 79.) In their assessment, he was determined to "ignore the orders of any court or arbitrator to do otherwise," and they described CAL's conduct as a "litigation strategy of delay." (*Id.*) The arbitrators ruled that CAL had "no legal grounds" for withholding the money, they ordered CAL to pay Compeer roughly $57 million plus interest, and they awarded CAL more than $3.5 million in attorneys' fees and costs. (*Id.* ¶ 170.)

A Minnesota federal district court ultimately confirmed these awards. (*See* No. 24-1896 (D. Minn. Mar. 27, 2025), Doc. 117; (D. Minn. Dec. 12, 2025, Doc. 294.) This Court will take judicial notice of these and other filings in the Minnesota case. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). The Minnesota district court also appointed a receiver to investigate CAL's finances and to recover the missing money. (*See* No. 24-1896 (D. Minn. Apr. 14, 2025), Doc. 142.)

The district court's assessment of CAL's actions was unequivocal: "extremely noncompliant, misleading, and obstructionist." (*See* No. 24-1896 (D. Minn. Mar. 26, 2025), Doc. 128 at 61.) Although the court ordered CAL's attorneys to show cause why sanctions should not be imposed, it did not impose those sanctions in the end. (No. 24-1896 (Oct. 23, 2025), Doc.

253.) But it warned CAL's attorneys that they should not mistake its "restraint" for "indifference." (*Id.* at 12.) They had "contributed to a record that misled [the] Court"; they had "submitted or allowed vague, incomplete, and misleading representations and appearances to stand uncorrected"; they had "failed to disclose what they had come to know—or should have come to know—about the true status of the funds"; and they had "maintained the appearance of cooperation while the money was vanishing or already gone, even as they were addressing [the] Court." (*Id.*) "[W]hen the truth emerged, they allowed the misimpression to persist." (*Id.*)

CAL appealed the confirmation orders and the order appointing a receiver. The Eighth Circuit affirmed. *See generally Compeer Fin., ACA v. Corp. Am. Lending, Inc.*, 180 F.4th 1119 (8th Cir. 2026). The appellate panel shared the district court's views about CAL's conduct: it had been "extremely noncompliant, misleading, and obstructionist." *Id.* at 1132.

This follow-on case is about an episode in the dispute between CAL and Compeer. A "heavily redacted" set of CAL's bank records showed that after Compeer demanded repayment, CAL transferred more than $35 million to some of its CEO's trusted friends or associates. (*See* Doc. 46 ¶¶ 89, 92–117.) Compeer refers to the recipients of these transfers as the "Inner Circle." (*Id.* ¶ 97.) The transfers looked very much like an attempt to "siphon" money away, to dissipate the funds, and to push them beyond Compeer's reach. (*See id.* ¶ 6.) Arbitrators ordered CAL to inform the "Inner Circle" that the money was "the property of another party and not the property of CAL or Mr. Cook," its CEO. (*Id.* ¶ 118.) A few days later, arbitrators also ordered CAL to "reacquire the funds." (*Id.* ¶ 120.) CAL did not comply. (*Id.* ¶ 123.) Its CEO said essentially that the recipients had all told him the same thing: the money was gone and could not be recovered because it had been "reinvested" in illiquid assets. (*See id.* ¶¶ 124–29.)

Only one of these transfers is relevant at the moment. On May 6, 2024, CAL and its CEO sent $5.4 million to the defendant in this case, Kristie Iness. (*Id.* ¶ 105.) CAL's CEO has described her as his "long-term client" and a person with whom he has "an ongoing business relationship." (*Id.* ¶ 90.) He is the sole member of a limited liability company that bears her name, and the LLC is registered from the same address as CAL. (*Id.*) He has made conflicting claims about the $5.4 million. At one point, he said that Iness had provided nothing in return, i.e.,

no "consideration." (*Id.* ¶ 106.) But at another point, he claimed that the $5.4 million was actually a repayment for a loan. (*Id.* ¶ 126.) He once said he could get the money back without any issue "through a simple conversation." (*Id.* ¶ 109.) But later he said that it would actually be impossible to get the money back: "The money was received and reinvested prior to October 23, 2024, and said investments will not be recovered or liquidated." (*Id.* ¶ 126.) Iness has said for her part (in a representation by her counsel on her behalf) that she reinvested the money with CAL. (*Id.* ¶ 132.) But she "has not provided any documentation substantiating this assertion," and she "has not submitted a declaration" to support her claims. (*Id.*)

Compeer filed this case against the members of the so-called "Inner Circle," including Iness, in early 2025. (Doc. 1.) Iness is represented in this action by two of the attorneys who represented CAL in the Minnesota district court, the same two attorneys who were the subject of that court's order to show cause, Barry W. Lee and C. Russell Georgeson. (*See, e.g.*, Doc. 52 at 1.) This Court, like the Minnesota district court, will tolerate no obstructionism, misrepresentations, or any conduct like that the Minnesota district court described in its order. "Lawyers have a duty to safeguard the integrity of the judicial process, even when that duty cuts against the interest of their client." (No. 24-1896 (D. Minn. Oct. 23, 2025), Doc. 253 at 11 (citation omitted).)

The Court issued a partial stay at the parties' stipulated request soon after this case was filed. (*See id.*; *see also* Doc. 72 (extending partial stay).) The claims against Iness have not been stayed, and she has moved to dismiss those claims under Federal Rule of Civil Procedure 12(b)(6). (*See* Doc. 52.) In the alternative, she moves to strike some allegations under Rule 12(f). (*See id.*) The motion is now fully briefed, and the Court found oral arguments were not necessary. (*See* Docs. 56–58.)

## PRECLUSION

Iness argues the first three claims against her (for conversion, common count, and civil theft) are precluded by the results of the arbitration between CAL and Compeer, and she moves to dismiss those claims under Federal Rule of Civil Procedure 12(b)(6).

This Court would ordinarily rely on California law to decide whether a previous judgment

or arbitration award is preclusive. *See Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002). But "[w]hen a federal court sitting in diversity confirms an arbitration award, the preclusion law of the state where that court sits determines the preclusive effect of the award." *NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1178 (9th Cir. 2019). A federal district court in Minnesota confirmed the arbitration awards in the dispute between Compeer and CAL, and that court was sitting in diversity, so Minnesota law determines whether the award has a preclusive effect in this case. *See id.* at 1181 (holding that Florida law governed the preclusive effect of an arbitration award confirmed by a federal district court sitting in diversity in Florida, rather than Washington law (the law of the jurisdiction where the appeal originated) or federal law (which the Washington district court had applied)).

Iness relies instead on California law and the opinions of California's appellate courts. It is unclear whether California's preclusion rules are the same as Minnesota's. There are reasons to doubt that they are. *Compare, e.g.*, *Cal Sierra Development, Inc. v. George Reed, Inc. Cal Sierra*, 14 Cal. App. 5th 663, 675–76 (2017) (discussing and applying California's "primary rights" doctrine) *with, e.g.*, *Nelson v. Am. Fam. Ins. Grp.*, 651 N.W.2d 499, 511 (Minn. 2002) (holding a claim was not precluded because the causes of action were not "identical"). It would be appropriate to deny Iness's motion summarily on the basis of this likely mismatch. *See Rios v. County of Sacramento*, 562 F. Supp. 3d 999, 1024 (E.D. Cal. 2021). The Court has nevertheless reviewed the relevant Minnesota law to ensure that applying that law will lead to the same result.

Iness argues first that the arbitration award is preclusive under the doctrine known as collateral estoppel or issue preclusion. (*See* Doc. 52 at 13.) Minnesota courts had long recognized this doctrine, which prevents "parties from relitigating issues which are identical to issues previously litigated and which were necessary and essential to the former resulting judgment." *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 650 (Minn. 1990). More formally, it "applies when (1) the issue to be addressed is identical to an issue in a prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party received a full and fair opportunity to be heard on the adjudicated issue." *State Farm Mut.*

*Auto. Ins. Co. v. Lennartson*, 872 N.W.2d 524, 534 (Minn. 2015). A final arbitration award can be a preclusive "final judgment on the merits" for purposes of this rule. *See Manion v. Nagin*, 392 F.3d 294, 300 (8th Cir. 2004) (applying Minnesota law); *see also, e.g.*, *Aufderhar*, 452 N.W.2d at 650–51.

By Iness's reasoning, Compeer cannot pursue its claims for conversion, common count, or civil theft against her because the arbitrators decided that CAL did not steal anything. (*See* Doc. 52 at 12–13.) In the document Iness cites to support these arguments, the arbitrators memorialized their decision that CAL breached its contract with Compeer and violated its covenant of good faith and fair dealing. (*See* Doc. 53 at 39, 41–42, 43.) The arbitrators then denied Compeer's claims for conversion and civil theft. (*See id.* at 42–43.) They wrote that "when a contract defines a relationship between two parties, a plaintiff is not entitled to recover tort damages save for exceptional cases in which a breach of contract constitutes or is accompanied by an independent tort." (*Id.* at 42 (quoting *Weulander v. N. Star Credit Union*, No. 23-885, 2024 WL 477165, at *4 (D. Minn. Feb. 7, 2024)).)

This rule, usually cited in shorthand as either the independent duty rule or the economic loss rule, is intended "to prevent contract claims from morphing into tort claims" and to avoid duplicative damages. *U.S. Bank Nat'l Ass'n v. San Antonio Cash Network*, 252 F. Supp. 3d 714, 719 (D. Minn. 2017) (applying Minnesota law). If the plaintiff's rights arise solely from a contract, then the defendant's duties also arise from that contract, so a breach of those duties would be a breach of contract only, not a tort. *See Staffing Specifix, Inc. v. TempWorks Mgmt. Servs.*, Inc., 896 N.W.2d 115, 126 (Minn. Ct. App. 2017), *aff'd*, 913 N.W.2d 687 (Minn. 2018). If, however, a defendant has both a contractual duty and an independent duty of care, then a plaintiff can recover both contract and tort damages. *See Wild v. Rarig*, 302 N.W.2d 775, 790 (1975). Railroads, for example, have a contractual duty to take passengers to their destination and an implied duty as common carriers to protect them along the way. *See id.*

Because the arbitrators relied on this independent duty rule, their decision amounted to nothing more than a finding that the relationship between CAL and Compeer was strictly contractual. In the document Iness cites, the arbitrators did not decide whether she had a

contractual relationship with Compeer. They did not decide whether she owed any particular duty to Compeer. They did not decide whether her duties (if she had any) arose from a contract or something else, nor whether her conduct ran afoul of any particular duty. They did not decide whether Compeer could pursue a claim against a third party, like Iness, based on a characterization of CAL's actions as "theft" or "stealing." They did not decide whether Compeer's actions would have amounted to a "theft" or "stealing" in the abstract, i.e., in the absence of any contractual promises it made. They did not decide whether it would be fair to describe Iness's conduct as "theft" or "stealing" independently of CAL's conduct. These issues were not decided or litigated, so they are not precluded.

Iness next relies on the preclusion doctrine known as res judicata or claim preclusion. (*See* Doc. 52 at 13–15.) This doctrine "bars a claim when litigation on a prior claim involved the same cause of action, there was a judgment on the merits, and the claim involved the same parties or their privies," provided that the precluded party "had a full and fair opportunity to litigate the matter in the prior proceeding." *Nelson*, 651 N.W.2d at 511. If an arbitration fulfills these requirements, the arbitration award is treated as final judgment on the merits for purposes of claim preclusion. *See Advanced Eng'g & Env't Servs., LLC v. Gaughan Companies*, No. A25-1734, 2026 WL 1469616, at *3 (Minn. Ct. App. May 26, 2026) (non-precedential) (citing *Quam v. United Fire & Cas. Co.*, 440 N.W.2d 131, 132 (Minn. App. 1989)).

By Iness's reasoning, this doctrine bars the conversion, common count, and theft claims because "the subject matter of the litigation here" is "the same as that at the center of the arbitration dispute." (Doc. 52 at 15 (citation and alterations omitted).) As she sees it, her "liability is dependent on CAL's wrongful taking of the funds." (*Id.*) "[W]ithout that taking, none of Compeer's claims against [her] would exist." (*Id.*) These are puzzling assertions. The arbitrators found that CAL had wrongfully withheld many millions of dollars from Compeer and had obstructed Compeer's attempts to recover that money. Their contractual relationship may have prevented Compeer from recovering tort damages, but this limit does not imply that CAL was justified in withholding funds from Compeer, nor that Iness would be justified in taking a portion of the funds for herself.

Iness uses the California Court of Appeal's opinion in *Cal Sierra*, cited above, to illustrate her reasoning. (*See* Doc. 52 at 14–15 (citing 14 Cal. App. 5th 663.) As noted, it is unclear whether California's "primary rights" doctrine—which the Court of Appeal applied in *Cal Sierra*—is representative of Minnesota law. *See, e.g.*, *Nelson*, 651 N.W.2d at 511 (finding a claim was not precluded because the causes of action were not "identical"). The persuasive value of the Court of Appeal's decision is inherently doubtful for that reason alone.

The circumstances that motivated the Court of Appeal's decision also differ from the circumstances of the relationships between Compeer, CAL, and Iness. The cases do share some similarities. *Cal Sierra*, like this case, was about the preclusive effect of an arbitration that resolved both contact and tort claims. *See* 14 Cal. App. 5th at 669–71. But the similarities do not go much further than that. The details of the dispute are complex and unnecessary to recount at length. It is enough to say for now that two mining companies (A and B) had signed a contract, that company B had then worked with a third party (company C) to build and operate an asphalt plant, and that a conflict about the asphalt plant arose between company A on the one hand and companies B and C on the other. *See id.* at 669. Company A contended essentially that companies B and C had built an asphalt plant in the way of its mining operation. *See id.* Company A proved in the arbitration that B had breached their contract, but it did not prove the asphalt plant's construction or operation amounted to a trespass, nuisance, or conversion. *See id.* Company A then pursued the same trespass, nuisance, and conversion claims against company C in court. *See id.* at 669–70. Its claims were precluded. The dispute in the follow-on case was the same dispute about the same events, the same asphalt plant, the same harm, and the same alleged wrongdoing, but with company C substituted into the place of company B. *See, e.g.*, *id.* at 674–77. Because the arbitration award represented a final judgment on the merits, it was preclusive. *See id.* at 671–80.

As Compeer points out, unlike the litigation between companies A and C, this case is not a second shot at the same unsuccessful claim. (*See* Doc. 56 at 13–14.) Iness's alleged wrongdoing (taking and keeping money that was not hers) is distinct from CAL's wrongdoing (delaying a payment in violation of a contractual promise). It would be a closer case if Compeer

had alleged that Iness was following CAL's directions and considered the arbitration binding upon her. *Cf. Cal Sierra*, 14 Cal. App. 5th at 674–75 (describing the relationship between companies B and C in a similar way). But even then it would be wrong to say that the claims represented the same cause of action under Minnesota law. "A cause of action or claim is 'a group of operative facts giving rise to one or more bases for suing.'" *Mach v. Wells Concrete Prods. Co.*, 866 N.W.2d 921, 925 (Minn. 2015) (quoting *Hauser v. Mealey*, 263 N.W.2d 803, 806 (Minn. 1978)). "Claims are not considered the same cause of action if 'the right to assert the second claim did not arise at the same time as the right to assert the first claim.'" *Id.* (quoting *Care Inst., Inc.–Roseville v. County of Ramsey*, 612 N.W.2d 443, 447 (Minn. 2000)). The claim against CAL arose when CAL withheld funds in violation of the contract. The claim against Iness arose when she took control of a portion of those funds. "[T]he operative facts are not the same, and different evidence supports each claim," *id.* at 926, so the claims against Iness are not precluded.

Finally, Minnesota courts do not enforce the state's preclusion rules "rigidly." *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004). "Instead, the focus is on whether their application would work an injustice on the party against whom the doctrines are urged." *Id.* Precluding Compeer's claims would risk an injustice. The arbitrators barred Compeer from asserting its claims for conversion and theft against CAL under the independent duty or economic loss rule, citing their contract. Iness had no contract with Compeer, but she argues that the arbitrators' decision (and thus, by extension, the independent duty or economic loss rule) precludes the claims against her just the same. She cites no case in which another court has combined preclusion and economic loss rules this way. Courts have instead held that the independent duty or economic loss rule does not bar a statutory theft claim like the one Compeer now asserts. *See Woods v. Merkelbach*, No. 23-02798, 2024 WL 1624171, at *9 (E.D. Cal. Apr. 15, 2024) (citing *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333 (2022) and *Bermel v. BlueRadios, Inc.*, 440 P.3d 1150 (Colo. 2019)).

For these reasons, Iness has not demonstrated that the Minnesota district court's orders, its judgment, or the underlying arbitration award are preclusive.

**MERITS**

Iness also moves to dismiss Compeer's claims on their merits. The Court must accordingly decide whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This is a "context-specific task." *Id.* at 679. The court must draw on its "judicial experience and common sense," *id.*, and accept "all reasonable inferences in favor of the nonmoving party," *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)).

As noted, Compeer first alleges Iness is liable for conversion under California law. "Conversion is generally described as the wrongful exercise of dominion over the personal property of another." *Regent All. Ltd. v. Rabizadeh*, 231 Cal. App. 4th 1177, 1181 (2014) (quoting *Fremont Indem. Co. v. Fremont Gen. Corp.* 148 Cal. App. 4th 97, 119 (2007)). Iness does not dispute that Compeer's allegations, accepted for the moment as true, would support a plausible claim that she wrongfully exercised control over its "personal property." She argues its conversion claim falls short for a different reason: that she did not steal the money, but rather accepted it in good faith as the legitimate repayment of a debt. (*See* Doc. 52 at 17–18.)

Conversion is "a strict liability tort." *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 544 (1996). "Therefore, questions of good faith, lack of knowledge and motive are ordinarily immaterial." *Id.* This means that a person who buys a stolen product in good faith can still be liable for conversion. *See Regent All.*, 231 Cal. App. 4th at 1181 (collecting authority). Iness acknowledges this rule as well. (*See* Doc. 52 at 16–17.) She relies on an exception to the general rule of strict liability. (*See id.*) It comes into play when the defendant received the allegedly converted property from someone who obtained it "by means of a fraudulent misrepresentation." *Regent All.*, 231 Cal. App. 4th at 1183. If the fraudster "sells the goods to a bona fide purchaser who takes for value and without notice of the fraud," then that bona fide purchaser cannot be liable for conversion. *Id.* (citation and quotation marks omitted). Iness argues that she was a bona fide purchaser who took control of the money for value, i.e., as satisfaction of a debt,

without notice that CAL had obtained the money by fraud. (*See* Doc. 52 at 17–18.)

This position contradicts Compeer's allegations. Compeer does not allege that CAL used fraud or misrepresentations to take control of the money, but rather that CAL attempted to conceal the fact that it had received a repayment, failed in that attempt, and then simply refused to pay. (*See* Doc. 46 ¶¶ 44–57.) Nor does Compeer allege that Iness accepted the money as a repayment of a debt. It alleges there was no debt. According to Compeer's complaint, arbitrators ordered CAL to tell Iness that the money she had received was "the property of another party and not the property of CAL." (Doc. 26 ¶ 118.) The arbitrators then ordered CAL to "reacquire the funds" from her. (*Id.* ¶ 120.) Compeer alleges that CAL refused to comply with this order, and it alleges CAL's CEO attempted to justify the company's actions or to delay the repayment in a misleading declaration. (*Id.* ¶ 123.) In that declaration, he claimed (1) that he "reiterated" to Iness that the money did not belong to CAL, (2) that he had asked her to return it, (3) that she had refused, and (4) that she said that the money was "the repayment of obligations owed by CAL to her." (*Id.* ¶ 126.) In reality, Compeer alleges, there was no debt; Iness took the money without consideration. (*See* Doc. 56 at 22–23 (summarizing allegations).) The motion to dismiss the conversion claim is denied.

After its conversion claim, Compeer asserts a common count for money had and received. "A common count alleges in substance that the defendant became indebted to the plaintiff in a certain stated sum, for some consideration such as money had and received by the defendant for the use of the plaintiff . . . and that no part of the sum has been paid." 4 Witkin, Cal. Proc. 6th Plead § 565 (2026) (quotation marks omitted); *see also id.* § 567 (money had and received). And so, to prevail on such a claim, a plaintiff must ultimately prove that the defendant "is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." *Schultz v. Harney*, 27 Cal. App. 4th 1611, 1623 (1994) (quoting *Pike v. Zadig*,171 Cal. 273, 275–276 (1915)). In other words, a plaintiff can prevail by proving the defendant "received money which belongs to another and which in equity and good conscience should be returned." *Hendrickson v. Octagon Inc.*, 225 F. Supp. 3d 1013, 1032 (N.D. Cal. 2016) (quoting *Mains v. City Title Ins. Co.*, 34 Cal. 2d 580, 586 (1949)).

Compeer's allegations support its claim. It alleges Iness received $5.4 million that does not belong to her, that the money was for Compeer's use under its contract with CAL, and that she has not repaid those funds. Iness argues again that she was "an innocent purchaser" and received the money "in good faith understanding" that it was a repayment on a debt. (*See* Doc. 52 at 18–19.) These contentions conflict with Compeer's allegations, as summarized above, so they cannot support her motion. Compeer's allegations also permit the Cour to infer that Iness knew the money was not CAL's to give. Compeer alleges she took and has kept the funds despite "red flags," including the lack of any consideration or written agreement, a warning from an arbitral panel that the money was not CAL's to give, inquiries by counsel about its whereabouts, and instructions to return it. (*See* Doc. 46 ¶¶ 105–07, 118–20, 132, 164.) According to the cases she cites, she would be obligated to return the money in these circumstances. *See, e.g.*, *Welborne v. Ryman-Carroll Found.*, 22 Cal. App. 5th 719, 726 (2018) ("[T]he recipient of money who has reason to believe that the funds he or she receives were stolen may be liable for restitution." (emphasis omitted)). The motion to dismiss the common count for money had and received is denied.

Compeer's third claim is for civil theft under the California Penal Code. The Penal Code imposes criminal liability on anyone who "receives any property . . . that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained." Cal. Penal Code § 496(a). Those who have been injured by a violation of this criminal prohibition can pursue a civil lawsuit for damages. *See id.* § 496(c). As Iness reads the complaint, Compeer alleges in only "conclusory fashion without any factual support, on information and belief," that she knew the money was obtained in a manner constituting theft. (Doc. 52 at 20.) As summarized above, Compeer's allegations permit a plausible inference of her knowledge, and it is plausible to infer that Compeer could show Iness is liable for civil theft regardless of its contractual relationship with CAL. *See Woods*, 2024 WL 1624171, at *9. It is also plausible to infer that Compeer could prove Iness's actions were a "theft" on their own terms, independently of what CAL and its CEO

did, if Compeer ultimately proves its factual allegations. The motion to dismiss the civil theft claim is denied.

Compeer's last three claims each allege a type of fraudulent conveyance. Iness relies on the same argument for each claim: that a conveyance cannot be "fraudulent" if it repaid a preexisting debt, and that is what CAL's CEO did when he gave her the $5.4 million. (*See* Docs. 52 at 20–21; 58 at 10.) Compeer alleges there was no debt to repay and no consideration, as summarized above, so the motion to dismiss the fraudulent conveyance claims is also denied.

**MOTION TO STRIKE**

Iness moves in the alternative to strike several allegations from the complaint under Rule 12(f). In the paragraphs she cites, Compeer alleges either that CAL "stole" money and committed "theft," or it alleges that Iness and the other members of the "Inner Circle" knew the property was obtained in a manner constituting theft. (*See* Doc. 52 at 22 (listing allegations).)

The purpose of Rule 12(f) "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are not granted unless the matter in question clearly has "no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). Iness has not demonstrated that Compeer's allegations about stealing and theft have no possible bearing on the case, nor that striking those allegations would save time and money. She argues "the arbitrators have already ruled against Compeer and in favor of CAL on Compeer's causes of action for conversion and theft." (Doc. 52 at 23.) This is a legal argument about what damages are available to Compeer and under what theories. It cannot support a motion to strike. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).

///

///

///

///

///

## CONCLUSION

For the reasons above, the motion to dismiss and strike (Doc. 52) is **DENIED**.

IT IS SO ORDERED.

Dated: _July 31, 2026_

UNITED STATES DISTRICT JUDGE